UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEL THOMPSON, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-386 (JCH) |
| v. | : | |
| | : | |
| OCWEN FINANCIAL CORP., et al., | : | AUGUST 27, 2013 |
|     Defendants. | : | |

**RULING RE: MOTIONS TO DISMISS (Doc. Nos. 8 & 36), MOTIONS FOR SUMMARY JUDGMENT (Doc. Nos. 18 & 40), AND MOTION TO EXTEND STAY (Doc. No. 37)**

Plaintiff Mel Thompson brings this action, pro se, for fraudulent assignment of a home mortgage loan against defendants Ocwen Financial Corporation ("Ocwen"); New Century Mortgage ("New Century"); Deutsche Bank National Trust Company ("Deutsche"); Morgan Stanley ABS Capital I, Inc. ("Morgan Stanley"); Hunt Leibert Jacobson, P.C. ("Hunt Leibert"); O'Connell, Attmore & Morris, LLC ("OAM"); William C. Erbey, Executive Chairman of Ocwen's Board of Directors; Angel T. Berry, Assistant Vice President of New Century; Geoffrey K. Milne, an attorney at Hunt Leibert; and Claudia Sklar, an attorney at OAM. In his Complaint (Doc. No. 1), Thompson alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.; violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq.; fraud; negligence; and slander of title.

On April 11, 2013, defendants Hunt Leibert and Attorney Milne filed this Motion to Dismiss (Doc. No. 8) for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6). On May 15, Thompson filed a first Motion for Summary Judgment (Doc. No. 18). A day later, on May 16, Hunt Leibert and Attorney Milne filed a Motion to Stay (Doc. No. 19) all matters in the case pending the court's ruling on the Motion to Dismiss, as well as a

1

Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment (Doc. No. 20). On May 21, the court granted the latter two motions in part, staying the case for sixty days, and granting Hunt Leibert and Attorney Milne an extension until thirty days from the court's ruling on the Motion to Dismiss to file their response to Thompson's Motion for Summary Judgment.[1]

On July 22, after the stay expired, co-defendants Deutsche, Ocwen, OAM, Erbey, and Sklar filed a separate Motion to Dismiss (Doc. No. 36) on grounds similar to those in the Motion to Dismiss already filed by Hunt Leibert and Attorney Milne. Immediately thereafter, on July 23, Hunt Leibert and Attorney Milne filed a Motion to Extend Stay (Doc. No. 37). On August 21, in the absence of a stay, Thompson filed a second Motion for Summary Judgment (Doc. No. 40).

For the reasons set forth below, Hunt Leibert and Attorney Milne's Motion to Dismiss (Doc. No. 8) is **granted**. The remaining motions pending in this case (Doc. Nos. 18, 36, 37 & 40) are **denied** as moot.

## I. BACKGROUND

The instant dispute centers on the assignment of Thompson's mortgage to Ocwen on May 11, 2010. The roots of this dispute, however, extend further back. In 2003, Thompson refinanced his home through a Connecticut mortgage broker Accent Capital. According to the Complaint, Accent Capital knowingly falsified mortgage documents, and it was on the basis of these falsified documents that New Century approved a loan to Thompson for $140,000. See Compl. at ¶ 28. That alleged fraud

---

[1] In the meantime, on May 17, Thompson filed a First Amended Complaint (Doc. No. 21), which added defendants as well as fraud-related claims, including misrepresentation and civil conspiracy. See First Am. Compl. at ¶ 16, 18.

2

has been the subject of several prior suits instituted by Thompson against many (but not all) of the defendants here in response to efforts to collect mortgage payments from him.  See Thompson v. Wachovia Corp., No. 3:06-CV-595 (SRU); Thompson v. Barclays Capital Real Estate, Inc., d/b/a Barclays Homeq Servicing, No. 3:10-CV-317 (AWT); Thompson v. Accent Capital, 3:11-CV-69 (AWT), 2011 WL 3651848 (D. Conn. Aug. 18, 2011), aff'd, 491 F. App'x 264 (2d Cir. 2012).[2]  In the present litigation, Thompson alleges that the May 11, 2010 assignment of his mortgage was fraudulent; that any such assignment should have occurred in September or October 2003; and that because the assignment was concealed from him, he did not discover it until December 2012.  See Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") (Doc. No. 10-1) at 17.

Of special relevance to the jurisdictional challenge in this case, Thompson filed a Chapter 7 petition on November 21, 2011.  See In re Melvin Thompson, No. 3:11-BK-32924-LMW; Affidavit of Trustee Katz ("Katz Aff.") (Doc. No. 14-1) at ¶ 2.  In the bankruptcy case, which remains open, Barbara Katz has been appointed as trustee of the debtor's estate.  See Katz Aff. at ¶ 2.  On March 19, 2012, Katz issued a Report of Abandonment of "all litigation in which the Debtor is a Plaintiff or Counter Plaintiff pending in Connecticut Superior Court and in Federal Court, both District Court and the

---

[2] The first case, before Judge Underhill, resulted in two settlements and two stipulations of dismissal.  See Thompson v. Wachovia Corp., No. 3:06-CV-595 (SRU) (Doc. Nos. 8, 9, 23, 26).  Thompson subsequently filed a motion to reopen the case and an amended complaint.  See id. (Doc. Nos. 39 & 36).  On March 7, 2008, Judge Underhill denied Thompson's motion and all other pending motions, without prejudice, on the ground that the case was closed and that Thompson would need to file a new case to pursue the relief sought.  See id. (Doc. No. 46).  On March 4, 2010, Thompson filed a second suit, which was dismissed on the basis that Thompson's claims were time-barred.  See Thompson v. Barclays Capital Real Estate, Inc., d/b/a Barclays Homeq Servicing, No. 3:10-CV-317 (AWT) (Doc. No. 44).  While this second case was pending, Thompson brought a third suit, which was dismissed on similar grounds.  See Thompson v. Accent Capital, 3:11-CV-69 (AWT), 2011 WL 3651848 (D. Conn. Aug. 18, 2011).  The Second Circuit subsequently affirmed the district court's ruling in that third suit.  See Thompson v. Accent Capital, 491 F. App'x 264 (2d Cir. 2012).

Court of Appeals." See Ex. A to Katz Aff. On July 31, 2012, Thompson received an order of discharge in the bankruptcy case. See Doc. No. 77, In re Melvin Thompson, No. 3:11-BK-32924-LMW.

## II. DISCUSSION

Pursuant to Rule 12(b)(1), Hunt Leibert and Attorney Milne move the court to dismiss this case for lack of subject matter jurisdiction. They argue that Thompson's claims belong to the bankruptcy estate and that, because the trustee did not abandon these claims, Thompson lacks standing to litigate them.

Hunt Leibert and Attorney Milne allege several alternative grounds for dismissal under Rule 12(b)(6): (1) Thompson's claims are precluded by his previous suits, under the doctrines of res judicata and collateral estoppel; (2) his FDCPA claims are time-barred; (3) the CUTPA does not authorize actions against an attorney by the opponent of the attorney's client; (4) Thompson has not pleaded fraud with sufficient particularity; (5) Thompson never demanded correction of the public records prior to this suit, as required to sustain a claim for slander of title; and (6) Hunt Leibert and Attorney Milne cannot be held liable for negligence because they owed Thompson no duty of care.

As explained in detail below, pursuant to Rule 12(b)(1), the court determines that it lacks subject matter jurisdiction. Hence, while the movants' arguments regarding Thompson's failure to state a claim under Rule 12(b)(6) may have merit, the court declines to address these additional grounds for dismissal.

### A. Standard of Review

Where, as in the instant case, a motion to dismiss is made on the ground that the court lacks subject matter jurisdiction as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first, since lack of subject matter jurisdiction

4

renders the other challenges moot.  See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); 5B Charles Alan Wright et al., Federal Practice and Procedure § 1350 (3d ed. 2013) ("[W]hen the motion [to dismiss] is based on more than one ground, the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.").

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate the case.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  On a 12(b)(1) motion, a plaintiff must prove by a preponderance of the evidence that subject matter jurisdiction exists.  Id.  Although the court must generally take as true all material facts alleged in the Complaint, the court refrains from drawing inferences favorable to the plaintiff's assertion of jurisdiction.  See APWU v. Potter, 343 F.3d 619, 623 (2d Cir.2003). Indeed, where jurisdictional facts are disputed, the court can and should consider evidence outside the pleadings, such as affidavits, in light of the case law developed under Rule 56.  See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986) ("While a 12(b)(1) motion cannot be converted into a Rule 56 motion, Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings.").

However, because Thompson proceeds pro se, the court applies "less stringent standards" to his submissions than to "formal pleadings drafted by lawyers."  Haines v.

5

Kerner, 404 U.S. 519, 520 (1972); see also Lopez v. Jet Blue Airways, 662 F.3d 593, 596 (2d Cir. 2011) ("Moreover, a pro se complaint is entitled to a particularly liberal reading."). On a 12(b)(1) motion, the court interprets submissions by a pro se plaintiff "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Id. at 475 (citation omitted).[3]

B. Thompson's Lack of Standing

"[W]hen a plaintiff lacks standing to bring suit, a court has no subject matter jurisdiction over the case." In re U.S. Catholic Conference, 885 F.2d 1020, 1023 (2d Cir. 1989). As a Chapter 7 debtor, Thompson has no standing to bring the legal claims raised in his Complaint, and this court therefore has no authority to adjudicate them, because the claims belong to the bankruptcy estate.

The filing of a bankruptcy petition creates an estate. See 11 U.S.C. § 541(a). With few exceptions not relevant to this case, the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); see In re Jackson, 593 F.3d 171, 176 (2d Cir. 2010). "Such interests include causes of action possessed by the debtor at the time of filing." In re

---

[3] The court notes in this regard that it has fully considered the arguments raised by Thompson's Sur-Reply Memorandum (Doc. No. 15), despite the fact that Thompson did not move the court for permission to file additional briefing beyond his Memorandum in Opposition to the Motion to Dismiss (Doc. No. 10).

Jackson, 593 F.3d 171, 176 (2d Cir. 2010); see also Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989).  Causes of action that arise after the debtor files for bankruptcy may also belong to the debtor's estate if they accrue before the bankruptcy case is closed. See 11 U.S.C. § 541(a)(7).  Citing section 541(a)(7), some District of Connecticut courts—this one included—have categorically treated postpetition causes of action that accrued during the pendency of the bankruptcy proceedings as property of the estate. See Tilley v. Anixter Inc., 332 B.R. 501, 508 (D. Conn. 2005); Correll v. Equifax Check Servs., Inc., 234 B.R. 8, 10 (D. Conn. 1997).  Other courts in the District have adopted a case-by-case approach, looking at whether the cause of action "is sufficiently rooted in the pre-bankruptcy past."  Charts v. Nationwide Mut. Ins. Co., 300 B.R. 552, 557-58 (D. Conn. 2003) (citing Segal v. Rochelle, 382 U.S. 375, 380 (1966), and noting that case's continuing validity after the adoption of the Bankruptcy Code in 1978); see also Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) ("Post-petition property will become property of the estate only if it is sufficiently rooted in the pre-bankruptcy past." (citation and internal quotation marks omitted)).

Under either approach, Thompson's present claims concerning the assignment of his mortgage to Ocwen belong to the estate.  The allegedly fraudulent assignment occurred on May 11, 2010, prior to Thompson's Chapter 7 petition.  Both the FDCPA and CUTPA are "occurrence" statutes.  See 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." (emphasis added)); Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter." (emphasis added)).  In other words, Thompson's FDCPA

7

and CUTPA claims accrued on May 11, 2010, at the time of the alleged violations rather than at the time Thompson claims to have discovered them, in December 2012. These claims were thus incorporated as property of the estate when Thompson filed his Chapter 7 petition in November 2011. Even assuming that other of his claims accrued at the time of discovery, which occurred after the commencement of Thompson's bankruptcy case, those claims are nevertheless rooted in the same prepetition conduct.[4]

For the purposes of the Rule 12(b)(1) Motion, the court credits Thompson's assertion that he failed to discover the present claims prior to December 2012 and, for that reason, did not include them in his bankruptcy schedule. However, neither Thompson's failure to discover the claims prior to his Chapter 7 petition nor his subsequent discharge in bankruptcy changes the status of these claims as property of the estate. "While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case,

---

[4] Under Connecticut law, Thompson's negligence and slander of title claims sound in tort and, therefore, also accrued at the time of the assignment. See Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); Bellemare v. Wachovia Mortgage Corp., 284 Conn. 193, 202 (2007) ("Slander of title is a tort whereby the plaintiff's claim of title [to] land or other property is disparaged by a letter, caveat, mortgage, lien or some other written instrument . . . ." (citation and internal quotation marks omitted)).

The "discovery rule" applies, if at all, only to Thompson's fraud claim, on the assumption that the defendants took affirmative steps to prevent Thompson from discovering the assignment of the mortgage to Ocwen. In that case, Thompson's fraud claim would have accrued when he discovered—or with reasonable due diligence should have discovered—that he suffered an injury. See Frulla v. CRA Holdings, Inc., 596 F. Supp. 2d 275, 289 (D. Conn. 2009).

Even if the facts alleged by Thompson warrant equitable tolling, that would not change the analysis here, since all of the claims in the instant case are inseparable from Thompson's longstanding dispute with several of the defendants over debt collection efforts stemming from his 2003 mortgage. Where courts have held after-arising claims not to be property of the estate, the claims were wholly unrelated to the debtor's prepetition past. See, e.g., In re Doemling, 127 B.R. 954 (W.D. Pa. 1991) (holding that Chapter 7 debtor had standing to litigate personal injury claim arising out of car accident five months after bankruptcy petition).

undisclosed assets automatically remain property of the estate after the case is closed." Chartschlaa, 538 F.3d at 122; see 11 U.S.C. § 554(c) & (d).  Indeed, it would be a detriment to creditors, and a temptation to the unscrupulous debtor, if the latter had only to await discharge to litigate unscheduled claims.  Not only does the bankruptcy case remain open, Katz Aff. at ¶ 2; unscheduled claims belonging to the Chapter 7 estate also remain estate property after the case closes, unless abandoned by the trustee, or unless the bankruptcy court orders otherwise.  See 11 U.S.C. § 554(d); 5 Collier on Bankruptcy ¶ 554.03 (16th ed. 2012) ("If the property is later discovered and is valuable, the court may reopen the case; if it is not valuable, the court may order the property to be abandoned without reopening the case and without incurring additional expense." (footnote omitted)); see also Tiller, 332 B.R. at 508 ("Even the close of the bankruptcy case does not permit the debtor to assert a claim that has not been properly abandoned.").

The automatic stay prevents anyone but the trustee from exercising control over estate property, including by bringing legal claims belonging to the estate.  See 11 U.S.C. § 362(a); In re Salander, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011).  Hence, only Katz has standing to assert the present claims.  Indeed, as trustee, Katz "has a duty to collect and liquidate all nonexempt property from the bankrupt's estate."  Seward, 888 F.2d at 963; see 11 U.S.C. § 704.  For Thompson to have standing, Katz must first have abandoned the claims in the pending bankruptcy proceedings.

Despite Thompson's assertion that he was unaware of the claims until December 2012, he argues that Katz abandoned them in her Report of Abandonment on March 19, 2012.  See Pl.'s Opp'n at 11.  Even construed liberally, Thompson's argument is

9

contradicted by the plain language of Katz's Report, the timing of the present litigation, and Katz's sworn statements to the contrary. Because abandonment irrevocably removes property from the debtor's estate, and thereby impairs the rights of creditors, it "is not a process to be taken lightly." Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 123 (2d Cir. 2008). "[A] trustee's intent to abandon an asset must be clear and unequivocal." Id. (citation omitted). No such intent is evident in Katz's Report. Just as Thompson himself alleges he was, Katz, too, was presumably unaware of the very existence of these claims. See 5 Collier, supra, ¶ 554.03 ("Abandonment presupposes knowledge."). Her Report expresses the intent only to abandon all pending litigation in which Thompson was a plaintiff or counterclaimant as of the Report's filing—that is, as of March 19, 2012. See Katz Aff. at ¶ 3. Thompson's Complaint here was filed a year later. In her sworn Affidavit, Katz also expressly disclaims any intent to "abandon claims that existed as of November 21, 2011 but were not the subject of pending litigation." Id. at ¶ 6.

Having determined that the present claims belong to the bankruptcy estate, and that the trustee did not abandon them, the court necessarily concludes that Thompson has no standing to bring them, and the court no power to decide them.

C. Dismissal as to Other Defendants

The court has a well-recognized duty to inquire into subject matter jurisdiction, including by raising the issue sua sponte in the absence of a motion by the parties. Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009). Upon careful review, the court determines that it lacks jurisdiction as to any of Thompson's claims against any of the defendants. The court's determination encompasses those claims subsequently raised in the First Amended Complaint as well

10

as all of the instant defendants, including the three defendants (New Century, Morgan Stanley, and Erbey) who have not yet filed an appearance and moved for dismissal. Without exception, Thompson's claims pertain to prepetition conduct and thus belong to the bankruptcy estate. Even were the bankruptcy case closed (which it is not, as of the date of this Ruling), Thompson would still have no standing, because none of his present claims were previously scheduled in that case or abandoned by the Chapter 7 trustee.

## III. CONCLUSION

For the reasons stated above, the court **grants** Hunt Leibert and Attorney Milne's Motion to Dismiss (Doc. No. 8). The court **denies,** as moot, Thompson's Motions for Summary Judgment (Doc. Nos. 18 & 40), the Motion to Extend Stay (Doc. No. 37), and the separate Motion to Dismiss filed by co-defendants Deutsche, Ocwen, OAM, Erbey, and Sklar (Doc. No. 36). The clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of August, 2013.

                                                   /s/ Janet C. Hall
                                                   Janet C. Hall
                                                   United States District Judge